O

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

Case No. 2:16-CV-02124 (VEB)

LINDA WOODS,

                Plaintiff,

vs.

NANCY BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

DECISION AND ORDER

## I. INTRODUCTION

In June of 2014, Plaintiff Linda Woods applied for Supplemental Security Income benefits under the Social Security Act. The Commissioner of Social Security denied the application.[1]

---

[1] On January 23, 2017, Nancy Berryhill took office as Acting Social Security Commissioner. The Clerk of the Court is directed to substitute Acting Commissioner Berryhill as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure.

Plaintiff, by and through her attorneys, Potter Cohen & Samulon, Eliot R. Samulon, Esq., of counsel, commenced this action seeking judicial review of the Commissioner's denial of benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

The parties consented to the jurisdiction of a United States Magistrate Judge. (Docket No. 11, 12). On March 27, 2017, this case was referred to the undersigned pursuant to General Order 05-07. (Docket No. 23).

## II. BACKGROUND

Plaintiff applied for benefits on June 30, 2014, alleging disability beginning February 15, 2003. (T at 19).[2] The application was denied initially and on reconsideration. Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").

On September 23, 2015, a hearing was held before ALJ Ken H. Chu. (T at 39). Plaintiff appeared with her attorney and testified. (T at 50-71). The ALJ also received testimony from Valerie Williams, a vocational expert. (T at 73-81).

On October 5, 2015, the ALJ issued a written decision denying the application for benefits. (T at 16-38). The ALJ's decision became the Commissioner's final

---

[2] Citations to ("T") refer to the administrative record at Docket No. 16.

DECISION AND ORDER – WOODS v BERRYHILL 2:16-CV-02124-VEB

decision on March 2, 2016, when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

On March 29, 2016, Plaintiff, acting by and through her counsel, filed this action seeking judicial review of the Commissioner's denial of benefits. (Docket No. 1). The Commissioner interposed an Answer on August 25, 2016. (Docket No. 16). Plaintiff filed a supporting memorandum on October 28, 2016 (Docket No. 19); the Commissioner filed an opposition memorandum on November 28, 2016. (Docket No. 20). Plaintiff filed a reply memorandum on December 9, 2016. (Docket No. 22).

After reviewing the pleadings, the parties' memoranda, and administrative record, this Court finds that the Commissioner's decision must be reversed and this case remanded for calculation of benefits.

## III. DISCUSSION

**A.      Sequential Evaluation Process**

The Social Security Act ("the Act") defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if any impairments are of such severity that he or she is not only unable to do previous work but cannot, considering his or her age, education and work experiences, engage in any other substantial work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if the person is engaged in substantial gainful activities. If so, benefits are denied. 20 C.F.R. §§ 404. 1520(a)(4)(i), 416.920(a)(4)(i). If not, the decision maker proceeds to step two, which determines whether the claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If the claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares the claimant's impairment(s) with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(iii),

416.920(a)(4)(iii); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents the claimant from performing work which was performed in the past. If the claimant is able to perform previous work, he or she is deemed not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, the claimant's residual functional capacity (RFC) is considered. If the claimant cannot perform past relevant work, the fifth and final step in the process determines whether he or she is able to perform other work in the national economy in view of his or her residual functional capacity, age, education, and past work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

The initial burden of proof rests upon the claimant to establish a *prima facie* case of entitlement to disability benefits. *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999). The initial burden is met once the claimant establishes that a mental or physical impairment prevents the performance of previous work. The burden then shifts, at step five, to the Commissioner to show that (1) plaintiff can perform other substantial gainful

activity and (2) a "significant number of jobs exist in the national economy" that the claimant can perform. *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir. 1984).

**B.    Standard of Review**

Congress has provided a limited scope of judicial review of a Commissioner's decision. 42 U.S.C. § 405(g). A Court must uphold a Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).

"The [Commissioner's] determination that a plaintiff is not disabled will be upheld if the findings of fact are supported by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572 (9th Cir. 1983)(citing 42 U.S.C. § 405(g)). Substantial evidence is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-02 (9th Cir. 1989). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971)(citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebreeze*, 348 F.2d 289, 293 (9th Cir. 1965). On review,

the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan*, 877 F.2d 20, 22 (9th Cir. 1989)(quoting *Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the Commissioner, not this Court, to resolve conflicts in evidence. *Richardson*, 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-30 (9th Cir. 1987).

**C.    Commissioner's Decision**

The ALJ determined that Plaintiff had not engaged in substantial gainful activity since June 30, 2014, the application date. (T at 22)   The ALJ found that Plaintiff's degenerative disc disease of the lumbar spine; residuals from gunshot wound; diabetes mellitus; obesity; hypertension; anxiety disorder; major depressive

disorder with psychotic features; and post-traumatic stress disorder were "severe" impairments under the Act. (Tr. 22).

However, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments set forth in the Listings. (T at 23).

The ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to perform a range of medium work, as defined in 20 CFR § 416.967 (c), as follows: she can lift/carry 50 pounds occasionally and 25 pounds frequently; she can stand/walk for 6 hours in an 8-hour workday and sit for 6 hours in 8-hour workday; she is limited to simple, repetitive tasks with no public contact, no more than frequent contact with peers, and no requirement of literacy. (T at 25).

The ALJ noted that Plaintiff had no past relevant work. (T at 31). Considering Plaintiff's age (48 years old on the application date), illiteracy, ability to communicate in English, work experience, and RFC, the ALJ determined that there were jobs that exist in significant numbers in the national economy that Plaintiff can perform. (T at 32).

Accordingly, the ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act between June 30, 2014 (the application date) and October 8, 2015 (the date of the decision) and was therefore not entitled to benefits.

(T at 33). As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review. (T at 1-6).

**D.     Disputed Issues**

Plaintiff offers three (3) arguments in support of her claim that the Commissioner's decision should be reversed.  First, she contends that the ALJ's consideration of the medical opinion evidence was flawed.  Second, she challenges the ALJ's credibility determination.  Third, Plaintiff argues that the ALJ did not properly address lay witness evidence.  This Court will address each argument in turn.

## IV. ANALYSIS

**A.     Medical Opinion Evidence**

In disability proceedings, a treating physician's opinion carries more weight than an examining physician's opinion, and an examining physician's opinion is given more weight than that of a non-:-examining physician. *Benecke v. Barnhart*, 379 F.3d 587, 592 (9th Cir. 2004); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinions are not contradicted, they can be rejected only with clear and convincing reasons. *Lester*, 81 F.3d at 830. If contradicted, the opinion can only be rejected for "specific" and "legitimate" reasons

that are supported by substantial evidence in the record. *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

An ALJ satisfies the "substantial evidence" requirement by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014)(quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). "The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id*.

In this case, Dr. Anna Xiao, Plaintiff's treating psychiatrist, completed a Mental Disorders Questionnaire in September of 2015. Dr. Xiao opined that Plaintiff had marked impairments in activities of daily living and social functioning due to her mental disorders. (T at 586). She likewise described Plaintiff as having diminished abilities to sustain concentration and complete tasks. (T at 586). Dr. Xiao believed Plaintiff would have significant difficulty performing work-related activities on a daily basis. (T at 587).

Dr. Xiao diagnosed major depressive disorder (recurrent, severe with psychotic features) and post-traumatic stress disorder. (T at 588). She assigned a

DECISION AND ORDER – WOODS v BERRYHILL 2:16-CV-02124-VEB

Global Assessment of Functioning ("GAF") score[3] of 52 (T at 588), which is indicative of moderate symptoms or difficulty in social, occupational or educational functioning. *Metcalfe v. Astrue*, No. EDCV 07-1039, 2008 US. Dist. LEXIS 83095, at *9 (Cal. CD Sep't 29, 2008). She opined that Plaintiff's condition met the impairment set forth under § 12.04 of the Social Security Listings. (T at 589).

Dr. Xiao described Plaintiff's mental health impairments as "severe and persistent," and opined that Plaintiff could not be expected to complete a normal workday or workweek. (T at 587). She believed that Plaintiff's auditory and visual hallucinations would negatively impact her ability to function in a work setting and that her impulsive decision making would make it difficult to make even simple work-related decisions. (T at 587-88).

Dr. Amber Ruddock, a clinical psychologist, performed a consultative examination in August of 2014. Dr. Ruddock opined that Plaintiff did not have any diagnosable mental impairments and assigned a GAF of 65 (T at 469). "A GAF of 61-70 indicates '[s]ome mild symptoms (e.g., depressed mood and mild insomnia) or some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has

---

[3] "A GAF score is a rough estimate of an individual's psychological, social, and occupational functioning used to reflect the individual's need for treatment." *Vargas v. Lambert*, 159 F.3d 1161, 1164 n.2 (9th Cir. 1998).

DECISION AND ORDER – WOODS v BERRYHILL 2:16-CV-02124-VEB

some meaningful interpersonal relationships.'" *Tagger v. Astrue*, 536 F. Supp. 2d 1170, 1174 n.8 (C.D. Cal. 2008).

Dr. Ruddock concluded that Plaintiff would have essentially no limitations to performing work-related activities, including complex tasks, other than a mild difficulty in interacting appropriately with supervisors. (T at 469-70).

In January of 2015, Dr. Helen Patterson, a non-examining State Agency review consultant, opined that Plaintiff retained adequate mental capacity to sustain simple work-like activities in a non-public work setting. (T at 231).

The ALJ gave "partial weight" to the opinions of Dr. Ruddock and Dr. Patterson, noting that evidence submitted after these opinions supported a finding of more significant mental health limitations, which the ALJ incorporated into the RFC determination (i.e. limitation to simple, repetitive tasks with no public contact and no more than frequent peer contact). (T at 25, 31). Nevertheless, the ALJ concluded that the opinions of the consultative examiner and State Agency review consultant provided support for his overall conclusion that Plaintiff's mental health impairments were not disabling. (T at 31).

The ALJ assigned "little weight" to Dr. Xiao's opinions, finding theme "quite conclusory" and inconsistent with the treatment record. (T at 31). The ALJ believed Dr. Xiao relied too heavily on Plaintiff's subjective reports. (T at 31).

DECISION AND ORDER – WOODS v BERRYHILL 2:16-CV-02124-VEB

For the following reasons, this Court finds the ALJ's assessment of the medical opinion evidence in error and not supported by substantial evidence.

First, Dr. Xiao's September 2015 questionnaire (which the ALJ incorrectly identifies as having been written in September 2013) cannot reasonably be characterized as "conclusory."

To the contrary, the report, which spans eight (8) pages of single-spaced type, includes clinical observations; a detailed description of Plaintiff's complaints and symptoms (e.g. dysphoric and anxious mood, poor concentration, low energy, crying spells, auditory and visual hallucination, suicidal ideation, suicide attempts); a lengthy summary of Plaintiff's medical, family, social, educational, employment, and environmental history; the results of a recent mental status examination (which indicated significant difficulties with concentration/memory, limited fund of knowledge, below average intelligence, dysphoric mood, constricted affect, auditory hallucinations, paranoid delusions); an assessment of Plaintiff's current level of functioning; a detailed diagnosis and GAF score; and a statement regarding Plaintiff's prognosis. (T at 582-89).

It is difficult for this Court to understand how the ALJ could have considered Dr. Xiao's highly-detailed, extremely through report "conclusory." It is, indeed, difficult to imagine what additional information or detail the ALJ would have

13

DECISION AND ORDER – WOODS v BERRYHILL 2:16-CV-02124-VEB

expected to find in a report of this type. This Court recognizes its duty of deference to the administrative findings, but no reasonable reading of the evidence can support the ALJ's decision to characterize Dr. Xiao's report as "conclusory."

Second, the ALJ characterized the treatment record as "mostly unremarkable" and discounted Dr. Xiao's opinion on that basis. However, the ALJ's conclusion is not consistent with a reasonable reading of the evidence. Treatment notes described Plaintiff as "down most of the time," "forgetful," experiencing auditory hallucinations (T at 494), homeless and living in the streets (T at 498), and experiencing visual hallucinations, anxious, irritable, chronic delusions (T at 502-504).

The ALJ also found that Plaintiff's mental health impairments appeared to be "amendable with conservative treatment [and] medication." (T at 28). Plaintiff's chronic homelessness and consistent symptoms (including suicide attempts) certainly undermine this conclusion. Moreover, Dr. Xiao explained that stress tended to exacerbate Plaintiff's mental health symptoms. (T at 586-87). Stress is "highly individualized" and a person with a mental health impairment "may have difficulty meeting the requirements of even so-called 'low-stress' jobs." SSR 85-15. As such, the issue of stress must be carefully considered and "[a]ny impairment-related limitations created by an individual's response to demands of work . . . must

be reflected in the RFC assessment." *Id.*; *see also Perkins v. Astrue*, No. CV 12-0634, 2012 U.S. Dist. LEXIS 144871, at *5 (C.D.Ca. Oct. 5, 2012).

In addition, individuals with chronic mental health problems "commonly have their lives structured to minimize stress and reduce their signs and symptoms." *Courneya v. Colvin*, No. CV-12-5044, 2013 U.S. Dist. LEXIS 161332, at *13-14 (E.D.W.A. Nov. 12, 2013)(quoting 20 C.F.R. Pt. 404, Subp't P, App. 1 § 12.00(D)). Here, the ALJ erred in characterizing the treatment record as "unremarkable" and then compounded the error by failing to recognize the impact of stress, such that even if Plaintiff's symptoms could somehow *arguably* be characterized as "well-managed," the impact of adding consistent work stress would still need to be accounted for. The ALJ did not give this adequate consideration.

Third, the ALJ's reliance on the opinions of the consultative examiner and State Agency review physician is not sufficient to sustain the decision. As the ALJ recognized, Dr. Ruddock (the consultative examiner) did not have the opportunity to consider Dr. Xiao's assessment, which was provided after the consultative examination. (T at 31).

In addition, Dr. Ruddock's report is unusual in that the clinical findings are quite inconsistent with the overall conclusions. For example, Dr. Ruddock noted that Plaintiff was "very difficult to engage with," "made no eye contact," became

DECISION AND ORDER – WOODS v BERRYHILL 2:16-CV-02124-VEB

"easily irritated," demonstrated poorly organized thoughts and below average intellectual functioning, poor memory/attention/concentration, and below average insight and judgment, with testing results placing Plaintiff in the moderate mental retardation range. (T at 468).

However, notwithstanding these very significant clinical findings, Dr. Ruddock assessed mild or no difficulties with regard to Plaintiff's ability to perform basic work activities. (T at 469-70). Dr. Ruddock does not provide an adequate explanation for this discrepancy. The subtext, as far as one can tell, appears to be that Dr. Ruddock believed Plaintiff's lack of cooperation and inappropriate behavior during the interview were feigned to some material degree. However, Dr. Ruddock did not characterize Plaintiff as a malingerer or offer any explanation to support her assessment of Plaintiff's behavior. In any event, the consultative examiner's opinion, which did not account for the treating psychiatrist's detailed assessment and which does not provide a credible basis for its ultimate conclusions, cannot constitute substantial evidence sufficient to sustain the ALJ's decision.

Dr. Patterson (the State Agency review consultant) also rendered her opinion before Dr. Xaio's assessment and never examined Plaintiff. This assessment can also thus not constitute substantial evidence. *See Lester v. Chater*, 81 F.3d 821, 831 (9th Cir. 1995)(citing *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990)).

DECISION AND ORDER – WOODS v BERRYHILL 2:16-CV-02124-VEB

In light of the foregoing, this Court finds the ALJ's consideration of Dr. Xaio's assessment flawed and concludes that the ALJ's assessment of Plaintiff's ability to perform the mental demands of basic work activity is not supported by substantial evidence.

**B.    Credibility**

A claimant's subjective complaints concerning his or her limitations are an important part of a disability claim. *Batson v. Comm'r of Soc. Sec. Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004)(citation omitted). The ALJ's findings with regard to the claimant's credibility must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990). Absent affirmative evidence of malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995). "General findings are insufficient: rather the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Leste*r, 81 F.3d at 834; *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993).

In this case, Plaintiff testified as follows: She attended school through the eleventh grade and does not have high school diploma or GED. She was placed in special education classes. (T at 50).  She has not worked for more than 10 years because of back pain (related to a gunshot wound), anxiety attacks, and depression.

(T at 53). She has had difficulty managing her prescription medications. (T at 55-57). Auditory and visual hallucinations are an issue. (T at 57-58). She was homeless at the time of the hearing and had been for some time. (T at 59). She can walk for 20 minutes before needing to take a break. Prolonged sitting is also painful. (T at 59-60). She is irritable and difficult to be around. (T at 61). Anger management is an issue and interpersonal issues are frequent. (T at 62). She cannot read. (T at 64).

The ALJ concluded that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that her statements regarding the intensity, persistence, and limiting effects of those symptoms were not entirely credible. (T at 26). For the reasons that follow, this Court finds the ALJ's credibility assessment flawed and not supported by substantial evidence.

First, the ALJ found that Plaintiff's treatment record did not support her allegations of disabling mental health symptoms. (T at 28). An ALJ may consider the lack of supporting objective evidence when analyzing credibility. *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). However, "[t]he fact that a claimant's testimony is not fully corroborated by the objective medical findings, in and of itself, is not a clear and convincing reason for rejecting it." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001); *see also Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883

(9th Cir. 2006) ("While an ALJ may find testimony not credible in part or in whole, he or she may not disregard it solely because it is not substantiated affirmatively by objective medical evidence."); *Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986) ("It is improper as a matter of law to discredit excess pain testimony solely on the ground that it is not fully corroborated by objective medical findings.").

Here, the ALJ concluded that Plaintiff's symptoms were "amendable with conservative treatment, medication" and, thus, discounted the credibility of her complaints of disabling symptoms. (T at 28). As discussed above, the ALJ's conclusion is not based on any reasonable reading of the record.

Dr. Xiao, Plaintiff's treating psychiatrist, opined that Plaintiff had marked impairments in activities of daily living and social functioning due to her mental disorders. (T at 586). She further opined Plaintiff would have significant difficulty performing work-related activities on a daily basis. (T at 587). Treatment notes described Plaintiff as "down most of the time," "forgetful," experiencing auditory hallucinations (T at 494), homeless and living in the streets (T at 498), and experiencing visual hallucinations, anxious, irritable, chronic delusions (T at 502-504).

Moreover, the ALJ's conclusion that Plaintiff's mental health impairments were "amendable" with treatment did not adequately account for the impact that

stress would play in exacerbating those impairments. Indeed, Dr. Xiao explained that stress tended to exacerbate Plaintiff's mental health symptoms. (T at 586-87).

Second, the ALJ faulted Plaintiff for non-compliance with medication and medical appointments and for failing to see "consistent psychotherapy." (T at 28-29). This was error under SSR 96-7p. Under that ruling, an ALJ must not draw an adverse inference from a claimant's failure to seek or pursue treatment "without first considering any explanations that the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." *Id.; see also Dean v. Astrue*, No. CV-08-3042, 2009 U.S. Dist. LEXIS 62789, at *14-15 (E.D. Wash. July 22, 2009)(noting that "the SSR regulations direct the ALJ to question a claimant at the administrative hearing to determine whether there are good reasons for not pursuing medical treatment in a consistent manner").

An ALJ's duty to develop the record is significant because there are valid reasons why a claimant might not follow a treatment recommendation. For example, "financial concerns [might] prevent the claimant from seeking treatment [or] . . . . the claimant [may] structure[] his daily activities so as to minimize symptoms to a tolerable level or eliminate them entirely." *Id.*

Here, there are important facts (including persistent homelessness, suicidal ideation and attempts, visually and auditory hallucinations) that provide critical context for understanding Plaintiff's periodic difficulties maintaining her medication regimen and inability to maintain consistent treatment. Dr. Xiao specifically noted that Plaintiff's symptoms impacted her ability to keep scheduled medical appointments. (T at 588).

The ALJ did not give adequate consideration to these facts. Further, as a general matter, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir.1996)(quoting *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir.1989)).

For the foregoing reasons, this Court finds that the ALJ's credibility determination is not supported by substantial evidence and cannot be sustained.

## C. Lay Evidence

"Testimony by a lay witness provides an important source of information about a claimant's impairments, and an ALJ can reject it only by giving specific reasons germane to each witness." *Regennitter v. Comm'r*, 166 F.3d 1294, 1298 (9th Cir. 1999).

In this case, Katherine Kimbell, who described herself as Plaintiff's friend, completed a "Function Report- Adult – Third Party" in July of 2014. Ms. Kimbell explained that she had known Plaintiff for over 10 years and took her to church on Sundays. Ms. Kimbell stated that Plaintiff often has problems breathing. (T at 345). She reported that Plaintiff, in general, had no problems related to personal care, although she did need help with grooming and taking her medication. (T at 346-47). Ms. Kimbell noted that Plaintiff was homeless at the time she completed her report and Ms. Kimbell did not believe Plaintiff could handle money. (T at 348). She described Plaintiff as "confused" and "depressed" and reported that Plaintiff did not handle stress "well." (T at 350-51).

The ALJ gave "little weight" to Ms. Kimbell's statements, finding them "not necessarily reflective of [Plaintiff's] maximal capacities." (T at 25). Given the consistency between Ms. Kimbell's statements and Plaintiff's subjective complaints, the treating psychiatrist's assessment, the treatment record, and this lay testimony, the ALJ's decision cannot be sustained. Moreover, the ALJ's primary conclusion from the lay report was that Plaintiff's ability to maintain a "friendship" with Ms. Kimbell contradicted her claims of disabling social limitations. (T at 26). The ALJ does not appear to have considered that Ms. Kimbell's "friendship" with Plaintiff appears, based on the record, to be a religiously-motivated charitable endeavor on

Ms. Kimbell's part, as opposed to a truly reciprocal relationship indicative of social skills. If the ALJ had considered this possibility and addressed it, this Court would be bound to defer to that conclusion, provided it was supported by substantial evidence. However, the ALJ gives no indication that he considered this interpretation of Ms. Kimbell's relationship with Plaintiff.

**D.    Remand**

In a case where the ALJ's determination is not supported by substantial evidence or is tainted by legal error, the court may remand for additional proceedings or an immediate award of benefits. Remand for additional proceedings is proper where (1) outstanding issues must be resolved, and (2) it is not clear from the record before the court that a claimant is disabled. *See Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004).

In contrast, an award of benefits may be directed where the record has been fully developed and where further administrative proceedings would serve no useful purpose. *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996). Courts have remanded for an award of benefits where (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were

such evidence credited. *Id.* (citing *Rodriguez v. Bowen*, 876 F.2d 759, 763 (9th Cir.1989); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989); *Varney v. Sec'y of Health & Human Servs.*, 859 F.2d 1396, 1401 (9th Cir.1988)).

Here, Plaintiff's treating psychiatrist provided a highly-detailed assessment indicative of severe, persistent, disabling mental health impairments. This assessment is generally supported by the treatment record. For the reasons outlined above, the ALJ failed to provide legally sufficient reasons for rejecting this testimony and for discounting Plaintiff's credibility. There are no outstanding issues that must be resolved before a determination of disability can be made. It is clear from the record that the ALJ would be required to find Plaintiff disabled were the improperly discounted evidence credited. As such, this Court finds that a remand for calculation of benefits is the appropriate remedy.

## V. ORDERS

IT IS THEREFORE ORDERED that:

Judgment be entered REVERSING the Commissioner's decision and REMANDING this action for calculation of benefits, and it is further ORDERED that

DECISION AND ORDER – WOODS v BERRYHILL 2:16-CV-02124-VEB

The Clerk of the Court shall file this Decision and Order, serve copies upon counsel for the parties, and CLOSE this case, without prejudice to a timely application for attorneys' fees and costs.

DATED this 11th day of September, 2017

/s/Victor E. Bianchini
VICTOR E. BIANCHINI
UNITED STATES MAGISTRATE JUDGE

DECISION AND ORDER – WOODS v BERRYHILL 2:16-CV-02124-VEB